James Henry CARPENTER, Petitioner,

v.

Donald T. VAUGHN, Superintendent, State Correctional Institution at Graterford, Pennsylvania, Respondent.

No. 1:CV–91–0934.

United States District Court, M.D. Pennsylvania.

Nov. 28, 1994.

Spero T. Lappas, Harrisburg, PA, for petitioner.

Ernest D. Preate, Jr., Atty. Gen. of Pa., Office of Atty. Gen., Harrisburg, PA, H. Stanley Rebert, John W. Thompson, Jr., York, PA, for respondent.

### MEMORANDUM

McCLURE, District Judge.

## BACKGROUND:

This case involves a petition for a writ of habeas corpus originally filed by James Henry Carpenter on July 23, 1991. The filing of the original petition for a writ of habeas corpus by petitioner's then-counsel coincided with the *pro se* filing by petitioner of a petition for a stay of execution, docketed to No. 3:CV–91–0943. A stay of execution was issued by the court, and the cases were consolidated to No. 3:CV–91–0934. The case then was stayed pending disposition of petitioner's state court appeal.

Petitioner was convicted of first degree murder in the Court of Common Pleas of York County, Pennsylvania, on January 20, 1984, and was sentenced to death. On November 19, 1992, the Supreme Court of Pennsylvania affirmed the denial of relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.Cons.Stat.Ann. §§ 9541 et seq. *Com. v. Carpenter*, 533 Pa. 40, 617 A.2d 1263 (1992).

New counsel was appointed to represent petitioner, and counsel has filed an amended petition for a writ of habeas corpus which incorporates by reference the original petition. Counsel also has been granted leave to conduct discovery in the form of taking of depositions.

Before the court is a motion by the Commonwealth[1] for reconsideration of our Order of Court dated July 21, 1994, in which we granted a motion to postpone a deposition of plaintiff's PCRA counsel for mental health reasons, and plaintiff's motion to dismiss the motion for reconsideration. Also, the court will review the issues raised by petitioner in his original petition and his amended petition for a writ of habeas corpus, for the purpose of narrowing the issues before us.

## STATEMENT OF FACTS/PROCEDURAL HISTORY:

On September 30, 1983,[2] at approximately 9:30 p.m., petitioner was with his girlfriend, Ruth Emmil, and another couple on South Penn Street in the City of York. The group was approached by Jimmie Lee Taylor, a former boyfriend of Emmil, with whom petitioner had a turbulent history. Fearing an altercation, the other couple continued to their destination, a nearby bar. Moments later, Taylor was stabbed in the heart. He was pronounced dead at the York Hospital at 10:58 p.m. Taylor was intoxicated at the time of the stabbing, having a blood alcohol content of .356 per cent.

At trial, the question was one of witness credibility. Emmil testified that respondent had stabbed Taylor without provocation, wiped the blood from the knife with a handkerchief, and tossed both the knife and the

---

1. Although not a named respondent, the entity representing the interest of the Commonwealth of Pennsylvania in upholding the validity of petitioner's conviction is the Office of the District Attorney of York County, which prosecuted the case. As such, for purposes of this memorandum, that Office will be designated as "the Commonwealth."

2. The summary of the events on the night of the murder is taken from the recitation of facts set forth in the opinion of the Supreme Court related to petitioner's direct appeal of his conviction. *Com. v. Carpenter*, 511 Pa. 429, 515 A.2d 531, 532–533 (1986).

handkerchief over a fence into the backyard of a nearby house. Petitioner testified that Emmil had done the stabbing and had disposed of the knife. Emmil's testimony was bolstered by the testimony of another witness who testified that petitioner had offered to pay the witness $500.00 to kill Taylor.

The jury believed Emmil's version of events and found petitioner guilty of first degree murder, and sentenced him to death. The Supreme Court of Pennsylvania heard the direct appeal of petitioner's conviction, and affirmed. *Com. v. Carpenter,* 511 Pa. 429, 515 A.2d 531 (1986) (*"Carpenter I"*). The case was then remanded to the Court of Common Pleas of York County for proceedings under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.Cons.Stat.Ann. §§ 9541 et seq. The Court of Common Pleas denied relief, and the Supreme Court of Pennsylvania again affirmed. *Com. v. Carpenter,* 533 Pa. 40, 617 A.2d 1263 (1992) (*"Carpenter II"*).

On July 23, 1991, while petitioner's appeal of the PCRA proceedings was still pending, petitioner filed his petition for a writ of habeas corpus and a motion for a stay of execution. The latter motion indicated that a death warrant had been signed by the Governor of Pennsylvania, and that the Supreme Court would not issue a stay of execution. We therefore ordered a stay of execution, *see generally McFarland v. Scott,* —— U.S. ——, 114 S.Ct. 2568, 2572, 129 L.Ed.2d 666, 677 (1994) (federal district court has jurisdiction to enter stay of execution prior to filing of petition for writ of habeas corpus in order to protect right to file petition and statutory right to appointed counsel in federal habeas proceedings), but stayed the habeas action pending disposition of the PCRA appeal.

On November 19, 1992, the Supreme Court issued its ruling affirming the denial of relief under the PCRA, and the stay of the instant proceedings was lifted. It then was brought to the court's attention that petitioner and his counsel had no meaningful relationship, and counsel was permitted to withdraw. Because of the dearth of attorneys experienced in the handling of this type of case in the Middle District, some delay occurred while counsel was located. Counsel now has filed an amended petition and conducted discovery, though not all of the discovery requested.

*ISSUES PRESENTED:*

In his original petition for a writ of habeas corpus, which was incorporated by reference in the amended petition, *see* Amended Petition for Writ of Habeas Corpus (record document no. 18) at 1 ¶ 1, petitioner raised the following grounds as cause for issuance of the writ:

(1) ineffective assistance of counsel for allowing the jury to hear that petitioner had a prior criminal record;

(2) ineffective assistance of counsel for failure, during jury selection, to question several jurors concerning their attitudes toward the death penalty;

(3) ineffective assistance of counsel for failure to present mitigating evidence of petitioner's background during the penalty phase of the trial;

(4) ineffective assistance of counsel for failure to object to an erroneous instruction concerning duress during the penalty phase of the trial;

(5) ineffective assistance of counsel for failure to object to the trial court's answer to a jury question;

(6) ineffective assistance of counsel for failure to object to testimony of Emmil that she had no criminal record and had never been arrested;

(7) ineffective assistance of counsel for failure to prepare petitioner for his trial testimony;

(8) ineffective assistance of counsel for failure to object to a reference by the prosecutor to a lie detector test;

(9) ineffective assistance of counsel for failure to object to a statement by the prosecutor in his closing argument that defense counsel and the District Attorney were in agreement that whoever killed Taylor was guilty of first degree murder;

(10) ineffective assistance of counsel for failure to object to the trial court's omission of a charge on a potential verdict of second degree murder;

(11) ineffective assistance of counsel for failure to object to the trial court's omission of a charge on a potential verdict of third degree murder based upon voluntary intoxication; and

(12) ineffective assistance of counsel for failure to object to the trial court's instruction on aggravating and mitigating circumstances, and imposition of the death penalty.

In his amended petition for a writ of habeas corpus, petitioner sets forth the following grounds as cause for issuance of the writ:

(13) ineffective assistance of counsel for failure to request jury instructions on available mitigating circumstances, extreme mental or emotional disturbance (42 Pa.Cons. Stat.Ann. § 9711(e)(2)), and duress § 9711(e)(5);

(14) ineffective assistance of counsel for failure to object to the trial court's instruction on duress as a mitigating factor, which erroneously applied the same standard for duress as that required for a complete defense to the crime;

(15) ineffective assistance of counsel for failure to object to the erroneous instruction in answer to the question from the jury (*see* Issue (5), above);

(16) ineffective assistance of counsel for failure to call for testimony at trial an eyewitness who would have corroborated petitioner's version of events;

(17) ineffective assistance of counsel for failure to object to a statement that petitioner was deserving of the death penalty because he "had his chance," having previously been released on parole after a conviction for third degree murder;

(18) the trial court's instructions failed to allow the jury to consider all of the relevant mitigating factors;

(19) the testimony of a parole officer during the sentencing phase improperly directed the jury's attention toward the possibility of parole;

(20) ineffective assistance of counsel for failure to argue available mitigating factors to the jury;

(21) ineffective assistance of counsel for failure to object to improper voir dire questions by the Commonwealth concerning prospective jurors' attitudes toward the death penalty;

(22) ineffective assistance of counsel for failure to challenge the Commonwealth's exercise of peremptory challenges [3] during jury selection (should investigation reveal improper challenges);

(23) ineffective assistance of counsel for failure to argue to the jury that Taylor's prior assault on petitioner constituted a mitigating circumstance;

(24) ineffective assistance of counsel for failure to present evidence, to argue to the jury, and to request a jury instruction regarding mitigating factors recognized in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Petitioner also contends that "certain official documents including the trial transcript are incorrect and unreliable and do not accurately reflect the proceedings in the trial court." Amended Petition for Writ of Habeas Corpus at 8–9 ¶ 3.

## DISCUSSION:

### I. PRELIMINARY MATTERS

#### A. Issues Raised by Briefs

In its response to the petition for a writ of habeas corpus, the Commonwealth points out that a number of the issues raised by petitioner via his amended petition for a writ of habeas corpus were not presented in either petitioner's direct appeal or his appeal of the PCRA decision. Response at 4–5 ¶ 7(a), (d), (e), (g), (i), (j), (k), and (*l*). The response later states: "With regard to petitioner's amended motion, Paragraph 5, those grounds that may be *procedurally defaulted* are noted previously." Response at 5 ¶ 10 (emphasis added). In its memorandum, however, the Commonwealth discusses these issues in the

---

**3.** In the amended petition, the phrase "preemptory challenge" is used. *But see* Black's Law Dictionary 1136 (6th ed. 1990) (defining "peremptory challenge").

context of exhaustion of remedies in the state courts. *See* Memorandum of Law at 1–2.

In his reply brief, petitioner argues that no issues have been procedurally defaulted or, alternatively, that any issues which have been procedurally defaulted should be excused for "cause and prejudice."

■ These arguments confuse the concepts of exhaustion and procedural default. In fact, there are three ways in which a person in state custody may waive the right to present federal constitutional issues via a petition for a writ of habeas corpus pursuant to § 2254. The facts and procedural posture of the instant case present a problem of exhaustion, not procedural default or the doctrine of abuse of the writ, the third form of bar to presentation of an issue through a petition under § 2254.

### B. Petition for a Writ of Habeas Corpus Generally

■ The authority for and limitations upon issuance of a writ of habeas corpus such as that sought by petitioner are set forth in 28 U.S.C. § 2254.[4] A district court may entertain a petition for a writ of habeas corpus filed by a person in state custody "only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[5] Habeas corpus relief may be considered only upon a showing by the petitioner that he or she has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b). Determinations made by a state court after a hearing on issues of fact are presumed to be correct, with specified

exceptions. 28 U.S.C. § 2254(d). The district court may, however, direct expansion of the record with evidence relevant to the court's determination of the merits of the petition. Rule 7 of the Rules Governing § 2254 Cases in the United States District Courts, 28 U.S.C. following § 2254.

### C. Exhaustion

[8] The requirement of exhaustion means that a state prisoner may initiate a federal habeas corpus action only after the state courts have had an opportunity to hear the claim the petitioner seeks to vindicate in federal court. *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986). The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable, and to the state's supreme court. *Evans v. Court of Common Pleas of Delaware County,* 959 F.2d 1227, 1230 (3d Cir.1992) (citing *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380, *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989)), *cert. dismissed,* 122 L.Ed.2d 498 (1993). The issue must be "fairly presented" to the state courts, meaning that "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts, ... and the same method of legal analysis must be available to the state court as will be employed in the federal court ..." *Evans,* 959 F.2d at 1231 (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968

---

4. 28 U.S.C. § 2254, when enacted, did not create new law, but codified then-existing law and Supreme Court precedent. Revision Notes and Legislative Reports, 1948 Acts, Act of June 25, 1948, c. 646, 62 Stat. 967, as reprinted following 28 U.S.C.A. § 2254 (1994). The evolution of the law of federal habeas corpus continues to be a responsibility of the judiciary. *See McCleskey v. Zant,* 499 U.S. 467, 484, 111 S.Ct. 1454, 1465, 113 L.Ed.2d 517 ("... Congress did not intend to disrupt the judicial evolution of habeas principles, ..."; referring to 28 U.S.C. § 2244 but discussing habeas generally; other citations omitted), *reh'g denied,* 501 U.S. 1224, 111 S.Ct. 2841, 115 L.Ed.2d 1010 (1991).

5. Generally, habeas relief is limited to claims of constitutional violations in the underlying criminal proceedings and not to claims of actual innocence, for the simple reason that the state trial is "the paramount event for determining the guilt or innocence of the defendant." *Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 855, 122 L.Ed.2d 203, 227, *reh'g denied,* —— U.S. ——, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993). Claims of innocence generally are limited to situations in which a petitioner claims an independent constitutional violation but the petition is successive or abusive; assuming that actual innocence may render a conviction unconstitutional, the necessary showing would be "extraordinarily high." *Id.*

(1983); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986)).

█ The provision of § 2254 relating to fair presentation of issues to the state courts reads:

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c). A claim is not exhausted, then, until it has been presented to the highest court of the state either on direct appeal or by collateral review, if the latter is available under state law, although presentation of the claim on direct appeal obviates the need to present the issue on collateral review. *Castille,* 489 U.S. at 349–350, 109 S.Ct. at 1059.[6] *See also Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640, 656–657 ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."; citations omitted), *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).

█ The exhaustion doctrine is based upon notions of comity, and is not jurisdictional in nature. *Story v. Kindt,* 26 F.3d 402, 405 (3d Cir.1994) (citing *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982)). Nevertheless, the exhaustion requirement is more than a mere formality: "It serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights." *Mayberry v. Petsock,* 821 F.2d 179, 183 (3d Cir.) (citing *Picard, supra*), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). "[T]he requirement should be strictly adhered to because it expresses respect for our dual judicial system." *Wise v. Fulcomer,* 958 F.2d 30, 33 (3d Cir.1992) (quoting *Landano*

*v. Rafferty,* 897 F.2d 661, 668 (3d Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990); also citing *Rose, supra* ).

█ There are, however, certain instances in which a petitioner's failure to exhaust state remedies may be excused. The Third Circuit has not required exhaustion in instances when "the state corrective process is so deficient as to render any effort to obtain relief futile," when "the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable," and when "inordinate delay in state procedures ... render[s] state process ineffective." *Wise,* 958 F.2d at 33 n. 6 (quoting, respectively, *Gibson,* 805 F.2d at 138; *Mayberry,* 821 F.2d at 184; *Hankins v. Fulcomer,* 941 F.2d 246, 249 (3d Cir.1991)). Nonetheless, neither the Supreme Court nor the Third Circuit has held that the "cause and prejudice" standard applies to a failure to exhaust state remedies.

### D. Procedural Default

█ Procedural default also is based upon notions of comity, both the authority of the state courts to resolve federal constitutional issues as well as a respect for the state courts' procedural rules. The concept of procedural default implicates the independent and adequate state ground doctrine. A lengthy discussion of procedural default is set forth in *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640, *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).

*Coleman* involved a petition for a writ of habeas corpus filed by a defendant convicted of rape and murder, and sentenced to death. 501 U.S. at 725–728, 111 S.Ct. at 2552–2553, 115 L.Ed.2d at 654. Coleman's conviction was affirmed by the Virginia Supreme Court, after which he filed a petition for a writ of habeas corpus in the lower state court, which denied the writ. *Id.* Coleman's appeal of the denial of habeas relief was dismissed as untimely by the Virginia Supreme Court.

---

**6.** Unlike the petition for allocatur at issue in *Castille,* jurisdiction over an appeal of a PCRA petition arising from a case in which the death penalty has been imposed is not discretionary with the Supreme Court of Pennsylvania. *See* 42 Pa.Cons.Stat.Ann. § 9546(d); *Carpenter II,* 617 A.2d at 1265.

501 U.S. at 725–729, 111 S.Ct. at 2552–2554, 115 L.Ed.2d at 654–655. The Supreme Court of the United States denied certiorari for both the direct appeal and the appeal of the denial of habeas relief. *Id.*

Coleman then filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Virginia which included four federal constitutional claims which had been raised on direct appeal and seven federal constitutional claims raised for the first time in the state habeas proceeding. 501 U.S. at 727–729, 111 S.Ct. at 2553–2554, 115 L.Ed.2d at 655. Despite holding that the latter seven claims had been procedurally defaulted, the District Court addressed all eleven claims. *Id.* The Court of Appeals for the Fourth Circuit affirmed, also holding that Coleman procedurally defaulted all of the claims presented for the first time in the state habeas proceeding. *Id.* The United States Supreme Court also affirmed. *Id.*

The Supreme Court's opinion begins with a review of the independent and adequate state ground doctrine, under which a federal court will not review a question of federal law decided by a state court if the decision of the state court is based upon a state law ground that is independent of the federal question and adequate to support the judgment. *Id.* (citations omitted). The independent and adequate state ground doctrine applies whether the state ground is substantive or procedural, *id.* (citations omitted), and applies to petitions for writs of habeas corpus filed with federal courts. 501 U.S. at 729–731, 111 S.Ct. at 2554, 115 L.Ed.2d at 656. However, before a federal court will refuse to review the federal question, there must be a clear and express statement by the state court that its decision is based upon state law; the independent and adequate state ground doctrine does not apply when the state court's opinion is ambiguous as to the ground relied upon for its decision, as there is a conclusive presumption that the state court relied upon the federal question. 501 U.S. at 731–735, 111 S.Ct. at 2555–2557, 115 L.Ed.2d at 657–659 (citing *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).[7]

After a review of the development of the procedural default doctrine and the policies which underlie the doctrine, the Court stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.... We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them....

501 U.S. at 750, 111 S.Ct. at 2565, 115 L.Ed.2d at 669 (citation omitted).

Coleman argued, however, that the failure of his attorney to file an appeal of the state habeas petition constituted cause sufficient to excuse his default. 501 U.S. at 750–752, 111 S.Ct. at 2565–2566, 115 L.Ed.2d at 670. While recognizing that performance of counsel which fails to meet the standard for effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), may provide cause to excuse default, the Supreme Court noted that Coleman's default occurred in state collateral proceedings to which the right to counsel does not attach; since there is no right to counsel in such proceedings, ineffective assistance of counsel is not cause to excuse procedural default. 501 U.S. at 750–753, 111 S.Ct. at 2565–2567, 115 L.Ed.2d at 670–671 (citing *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Pennsylvania v. Finley,* 481 U.S.

---

7. A lengthy discussion concerning this presumption and its inapplicability in Coleman's case follows. *See Coleman,* 501 U.S. at 734–745, 111 S.Ct. at 2556–2562, 115 L.Ed.2d at 659–665. Since this issue is not material for present purposes, it will not be reviewed in detail.

551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)).[8]

▮▮▮ Moreover, the cause proffered by a petitioner to excuse default must be something external to the petitioner, and not something attributable to the petitioner. 501 U.S. at 752–754, 111 S.Ct. at 2566–2567, 115 L.Ed.2d at 671 (citing *Carrier, supra*). Examples of cause may be the unavailability of the factual or legal basis for a claim, or interference by officials which makes compliance impracticable. *Id.* Principles of agency law do not operate so as to permit attorney inadvertence to constitute cause to excuse default, since the same principles operate so as to attribute the inadvertence to the petitioner, and the petitioner bears the burden of the failure to follow procedural rules because of the state interests discussed above. 501 U.S. at 752–755, 111 S.Ct. at 2566–2567, 115 L.Ed.2d at 671–672 (citations omitted).

Finally, Coleman argued that he had a right to counsel in presenting his claims of ineffective assistance of counsel during trial, sentencing, and on appeal to the state habeas court because that was his first appeal as of right on these issues. 501 U.S. at 754–755, 111 S.Ct. at 2567, 115 L.Ed.2d at 672. Under Virginia law then in effect, Coleman was permitted to present claims of ineffective assistance of counsel only in the collateral, state habeas proceedings. *Id.* (citations omitted). The Supreme Court held that, even if this was the case, Coleman's first appeal of these issues was in the state habeas court itself, and that there was no right to counsel for further appeals of that court's determinations. 501 U.S. at 755–757, 111 S.Ct. at 2567–2568, 115 L.Ed.2d at 673. The default occurred during the appeal of that determination, at a time when there was no constitutional right to counsel, and ineffective assistance of counsel therefore could not constitute cause for the default. 501 U.S. at 757–758, 111 S.Ct. at 2568–2569, 115 L.Ed.2d at 673–674.

▮▮▮ Succinctly stated, then, *Coleman* stands for the proposition that a criminal defendant's claims of federal constitutional error which, if proven, would invalidate a conviction must be presented to the state courts before federal habeas relief will be available. The federal constitutional issues must be presented in a manner consistent with the state's procedural rules. These rules are entitled to deference by the federal courts, and violation of a state's procedural rules constitutes an independent and adequate state ground for denial of claims of constitutional error. Federal habeas relief is not available to a petitioner whose federal constitutional claims have not been addressed on their merits due to a procedural default, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

### E. Abuse of the Writ

In *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517, *reh'g denied,* 501 U.S. 1224, 111 S.Ct. 2841, 115 L.Ed.2d 1010 (1991), the Supreme Court reviewed the abuse of the writ doctrine. A petitioner for a writ of habeas corpus abuses the writ "by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." 499 U.S. at 490, 111 S.Ct. at 1468 (citations omitted).

▮▮▮ As with the exhaustion requirement and procedural default, abuse of the writ is based upon notions of comity; in fact, in *McCleskey,* the Court pointed out at length that procedural default and abuse of the writ are based upon nearly identical considerations, leading to its conclusion that the standard for excusing either should be the same.

We conclude from the unity of structure and purpose in the jurisprudence of state procedural defaults and abuse of the writ that the standard for excusing a failure to raise a claim at the appropriate time should be the same in both contexts. We have held that a procedural default will be excused upon a showing of cause and prejudice. *Wainwright v. Sykes,* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, (1977) ]

---

**8.** It is important to note that, under *Giarratano,* this principle applies in capital cases.

*supra.* We now hold that the same standard applies to determine if there has been an abuse of the writ through inexcusable neglect.

*McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1470.

As with procedural default, then, federal habeas relief is unavailable to a petitioner [9] who fails to raise a constitutional issue in his or her first petition for a writ of habeas corpus in a federal court, unless the petitioner can show cause to excuse the failure and prejudice, or a fundamental miscarriage of justice.

The policies underlying both procedural default and abuse of the writ were discussed by the Supreme Court as follows:

> ... Both doctrines impose on petitioners a burden of reasonable compliance with procedures designed to discourage baseless claims and to keep the system open for valid ones; both recognize the law's interest in finality; and both invoke equitable principles to define the court's discretion to excuse pleading and procedural requirements for petitioners who could not comply with them in the exercise of reasonable care and diligence. It is true that a habeas court's concern to honor state procedural default rules rests in part on respect for the integrity of procedures "employed by a coordinate jurisdiction within the federal system," *Wainwright v. Sykes, supra,* [433 U.S.], at 88, 53 L.Ed.2d 594, 97 S.Ct. 2497, and that such respect is not implicated when a petitioner defaults a claim by failing to raise it in the first round of federal habeas review. Nonetheless, the doctrines of procedural default and abuse of the writ are both designed to lessen the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments.

*McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1469.

### F. Comparison

Each of these procedural deficiencies, namely, failure to exhaust state remedies, procedural default, and abuse of the writ, relate to a petitioner's failure to present properly a claim or claims of federal constitutional deprivation(s) in the petitioner's underlying conviction. The basic difference between each of the three is the timing of the failure. When the petitioner fails to exhaust state remedies, the claims are never presented to the state court. When the petitioner procedurally defaults, the claims are presented to the state court in violation of state procedural rules, thereby precluding consideration of the merits of the claims. Abuse of the writ occurs when the claims are not presented to the federal habeas court in the initial petition, but then are included in a subsequent petition.

In each instance, however, the court with authority to hear the claim initially is unable to do so based upon the petitioner's conduct, whether it is intentional manipulation or inexcusable neglect. Moreover, each failure undermines the finality of the state trial court's judgment. The same policy considerations underlie all three types of deficiencies. The last-quoted provision of *McCleskey* easily describes failure to exhaust state remedies as much as it describes procedural default and abuse of the writ.

### G. Briefing of the Issues

In reviewing the claims set forth by petitioner, the court found it necessary to perform considerable research without the benefit of thorough briefing by the parties. The Commonwealth's response to the petition simply lists the claims and directs the court to the discussion of the issue by the Pennsylvania Supreme Court or the PCRA court. As to those issues not addressed by those courts, the response simply indicates, "not previously raised." Response at 4–5 ¶ 7. The Commonwealth's memorandum of law, less than three pages in length, gives only a

---

**9.** The state, however, bears the initial burden of raising the defense of abuse of the writ. *McCles-* *key,* 499 U.S. at 494, 111 S.Ct. at 1470.

brief summary of the law of exhaustion and ineffective assistance of counsel, and concludes that petitioner's trial was fair.

■ It is not the customary practice, nor even an acceptable practice, before this court to provide a brief, memorandum or other document which simply lists issues and directs the court to a place where it can do its own research. Our Chief Judge stated the principle as follows: " 'Judges are not like pigs, hunting for truffles buried in briefs.' ... A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority ... forfeits the point." *Grossman v. Jiminez*, No. 91–0423, slip op. at 5 (M.D.Pa. issued April 17, 1991) (Rambo, C.J.; quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). The same principle applies to this case: It is the litigants' role to present their case to the court, not vice versa.

A failure to address the issues, and to support the party's position on the issues, demonstrates a lack of respect for this court and these proceedings which may not be countenanced. Even more seriously, it demonstrates a lack of regard for the gravity of the matters before this court. We recognize that the Commonwealth has concluded that petitioner is guilty of the crime for which he was convicted, that its position was vindicated by the jury verdict, and that it performed its function properly in obtaining that conviction. The ending of a human life, however, even within the bounds of the law, is not a matter to be regarded lightly. All parties and all counsel are expected to conduct themselves and to perform their roles with due regard for the gravity of the case.

## II. NARROWING THE ISSUES BEFORE THE COURT

As set forth above, petitioner has presented the court with a litany of constitutional claims which he argues invalidate his conviction. Many of these issues were presented to the Pennsylvania Supreme Court and to the PCRA court, and are of little merit. In order to eliminate those claims, and to focus on the more meritorious claims raised by petitioner, we review each of the claims raised, in the order presented in the petition and the amended petition, and will dismiss those claims which do not merit relief or further consideration.

### Issue (1)

■ Petitioner's first contention is that the jury was prejudiced unreasonably by the testimony of a witness who stated that he was a parole officer, and that he knew petitioner. According to petitioner, this testimony placed before the jury the fact of petitioner's prior criminal history. We agree with the Supreme Court of Pennsylvania that "[t]his argument has little merit." *Carpenter I*, 515 A.2d at 534.

The Supreme Court rejected this notion because the witness never stated that he was petitioner's parole officer, nor how he came to be acquainted with petitioner. Concluding that the witness was petitioner's parole officer would have been mere speculation. *Carpenter I*, 515 A.2d at 534–535.

Moreover, no objection was made to the testimony at the time it was offered. Counsel for petitioner later moved for a mistrial, explaining that the objection was late because counsel's attention had been diverted by petitioner, who was talking to counsel at the time of the testimony. The trial court denied the motion for a mistrial and offered to give a curative instruction, the offer being declined based upon counsel's desire not to emphasize the testimony. *Carpenter I*, 515 A.2d at 534.

We find no ineffective assistance of counsel in this regard. First, the alleged prejudice arising from this testimony is at best speculative. Second, counsel made an objection and moved for a mistrial as soon as he became aware of the testimony, then made a strategic decision not to emphasize the testimony through a curative instruction. Trial counsel was not ineffective for failure to object to the testimony concerning the parole officer's testimony concerning his occupation.

### Issue (2)

■ Petitioner's second contention is that counsel was ineffective for failing to question several prospective jurors concerning their

attitudes toward the death penalty.[10] In fact, according to the opinion of the PCRA court, the jurors in question each indicated that they could render a fair and impartial verdict, and could follow the law concerning imposition of the death penalty. Opinion of the PCRA Court, Appendix A to Brief of Appellant [Petitioner] on Second Appeal to Supreme Court of Pennsylvania, at 6–8. Counsel was not ineffective in this regard.

### Issue (3)

Petitioner's third contention is that trial counsel was ineffective for failing to present mitigating evidence of petitioner's background during the penalty phase of the trial. This issue also was addressed by both the Supreme Court of Pennsylvania and the PCRA court. Petitioner testified as to his own background and character during the death penalty phase, and provided no names to counsel for the purpose of further testimony on petitioner's background. Petitioner himself indicated that he was prepared to go ahead with the death penalty phase of the trial. *Carpenter II*, 617 A.2d at 1269; PCRA Opinion at 24–25.

### Issue (4)

Petitioner next contends that trial counsel was ineffective for failing to object to an erroneous instruction by the trial court concerning duress during the death penalty phase. Petitioner argues that the trial court failed to instruct the jury that duress in the context of mitigating circumstances varies from the defense of duress. *See* 42 Pa.Cons. Stat.Ann. § 9711(e)(5) (duress as a mitigating factor); 18 Pa.Cons.Stat.Ann. § 309 (duress as a defense).

As pointed out by both the Supreme Court of Pennsylvania and the PCRA court, however, petitioner did not raise duress as a defense; therefore, there was no reason to distinguish the defense from the mitigating factor during the penalty phase of the trial. *Carpenter II*, 617 A.2d at 1268–1269; PCRA Opinion at 21–24.

**10.** Petitioner also contends that the prosecution asked *too many* questions regarding potential

### Issue (5)

The next contention raised by petitioner is that trial counsel was ineffective for failure to object to the trial court's answer to a jury question. The jury's question was whether they could recommend a sentence of life in prison with a guarantee of no parole. The response of the trial court, in its entirety, was:

> The answer is that simply, no absolutely not. Moreover, ladies and gentlemen, you talk about recommendation. I don't know exactly what you mean, but I assume you remember what I told you before, that you as a jury at this point are not making a recommendation of death or life imprisonment. I hope you understand that.
>
> You folks are actually fixing the sentence, and not the Court. It is not the recommendation. Whether you mark on there death, that's the sentence and there is nothing this Court can do about it. The Court has nothing to do on it. If you mark life imprisonment, there is nothing this Court can do about it or wants to do about it, because that decision is entirely up to you as members of the jury. So, I hope you understand that it is not a recommendation, it is a sentence that will bind all of us here to whatever you fix and it's going to have to be very simply death or life imprisonment. And the question of parole is absolutely irrelevant. I hope you understand that.

*Carpenter II*, 617 A.2d at 1269.

Petitioner states, "Under Pennsylvania law, there is no parole to a life sentence." Petition for a Writ of Habeas Corpus at 9, Ques. 12(E). In its opinion, the Supreme Court of Pennsylvania, like the trial court, focused on that part of the question regarding whether the jury could "recommend" a particular sentence. The trial court responded that the jury was not recommending a sentence; instead, it was setting a sentence.

The problem with this reading of the jury's question is that its obvious import is overlooked. The jury did not just ask whether it was recommending a sentence; it asked

jurors' attitudes towards the death penalty. *See* Issue (21), below.

whether it could recommend a particular sentence, one of life imprisonment without parole. The rather obvious concern reflected in such a question is not a recommendation, but whether petitioner would be paroled if a death sentence was not returned. Unlike the Supreme Court of Pennsylvania, we do not find this interpretation of the jury's question and the trial court's response to be a "tortured reading" of the question and answer, nor do we see this reading as petitioner's overzealous attempt to "manufacture an error." *Carpenter II*, 617 A.2d at 1269–1270.

It should also be noted that the Supreme Court of the United States has held that the issue of parole is not "absolutely irrelevant." *See Simmons v. South Carolina*, —— U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). In that case, the Supreme Court of the United States held that a trial court is required, under the Due Process Clause of the Fourteenth Amendment, to instruct a jury during the death penalty phase of a trial for a capital offense that a defendant is ineligible for parole, if the defendant in fact is ineligible under state law. Specifically, the Court stated, "We hold that where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Simmons*, —— U.S. ——, 114 S.Ct. at 2190, 129 L.Ed.2d at 138.

In petitioner's case, the sole aggravating circumstance for which the prosecution argued and introduced evidence was that of "a significant history of felony convictions involving the use or threat of violence to the person." *Carpenter I*, 515 A.2d at 533 (quoting 42 Pa.Cons.Stat.Ann. § 9711(d)(9)). Therefore, it is petitioner's criminal history, not his future dangerousness, that technically was at issue.

However, use of prior criminal acts to establish a "cumulative punishment" theory for imposition of the death penalty necessarily entails risks that the verdict will be decided on an improper basis. One of the effects which a revelation of a defendant's prior history would have on a jury is that of bringing his future dangerousness into the jury's deliberations, even if it is not necessarily in issue. A question like that asked by the jury which decided petitioner's case reflects this problem: a jury cannot "unhear" the evidence presented, and will wonder whether the defendant is not prone to commit further crimes if he is released, as on parole. It is for exactly this reason that the use of prior "bad acts" evidence and prior criminal history is so limited. *See, e.g.,* Fed.R.Evid. 404(b) (evidence of "other crimes, wrongs, or acts" not admissible unless offered for limited, specified purposes); Fed.R.Evid. 609 (use of evidence of conviction of crime for impeachment).

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Notes of Advisory Committee on 1972 Proposed Rules, reproduced following Rule 404, Title 28 U.S.C.A. at 196 (quoting Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. VI. Extrinsic Policies Affecting Admissibility), Cal. Law Revision Commission, Report, Record & Studies at 615).

The problem in the instant case is two-fold: First, petitioner raises the argument as an ineffective assistance of counsel claim, not as a due process claim. Second, the claim was not raised as such before the state courts.

■ As to the ineffective assistance of counsel claim, the Supreme Court of the United States had not held, prior to *Simmons*, that a state must instruct a jury during the death penalty phase that the defendant is ineligible for parole under state law. Counsel for petitioner cannot be said to have been ineffective for failing to predict the Court's ruling more than ten years in advance.[11] *See United States v. Baynes*, 687

---

11. Petitioner was convicted on January 20, 1984. *Simmons* was decided on June 17, 1994. —— U.S. at ——, 114 S.Ct. at 2192, 129 L.Ed.2d at 133.

F.2d 659, 668 n. 11 (3d Cir.1982); *Morse v. Texas,* 691 F.2d 770, 772 n. 2 (5th Cir.1982). There was no ineffectiveness in counsel's failure to object to the trial court's response to the question from the jury.

■■ The next question to be resolved is whether this court may consider a claim that the failure to instruct the jury that petitioner would be parole ineligible if sentenced to life imprisonment violated petitioner's due process rights. As noted, the question was raised as such neither in the state courts nor in the petitions presented to this court. However, in contending that counsel was ineffective for failing to object to the answer, petitioner is claiming an underlying violation of his rights, i.e. the due process violation. The due process claim, then, is inherent in the claim of ineffective assistance of counsel, and we will consider the due process claim.

This holding resolves both prongs of the two-fold problem discussed above. The fact that the due process claim is inherent in the claim of ineffective assistance of counsel means that the claim was presented to this court, not "as such" but in another context. Also, the due process claim was inherent in the claim of ineffective assistance of counsel presented to the state courts, and petitioner therefore has exhausted his state remedies. In both instances, the due process claim properly may be considered by this court.

We recognize that *Simmons* was decided well after petitioner was convicted. The question then becomes whether *Simmons* may be applied retroactively. There is also a question of whether *Simmons* controls this case, since the facts of each case vary. Since neither party has had the opportunity to present arguments concerning *Simmons* in their briefs, we will direct further briefing concerning the applicability of the *Simmons* decision to petitioner's case.

### Issue (6)

■■ Petitioner next contends that trial counsel was ineffective for failing to object to testimony by Emmil that she had no criminal record and had never been arrested. This line of questioning took place on redirect examination of Emmil by the prosecutor, in response to questions asked by defense counsel regarding her purported propensity toward violence. The questions therefore were entirely proper, and counsel was not ineffective for failing to object. *Carpenter II* at 1266.

### Issue (7)

Petitioner contends that trial counsel was ineffective in that counsel failed to prepare petitioner for his trial testimony. The Supreme Court of Pennsylvania addressed this issue as follows:

... The chief complaint is that if trial counsel had spent enough time with [petitioner], he would not have made various damaging admissions and statements when he testified. The PCRA court rejected this claim, noting that Appellant was very familiar with the criminal justice system and there was extensive preparation of [petitioner] for this trial. Under such circumstances, we agree that counsel cannot be blamed for Appellant's voluntary decision to expand his prepared testimony and make damaging remarks.

*Carpenter II,* 617 A.2d at 1270. We agree.

### Issue (8)

■■ Petitioner next contends that trial counsel was ineffective for failing to object to a reference by the prosecutor to a lie detector test (i.e. a polygraph examination). Both the PCRA court and the Supreme Court of Pennsylvania noted that petitioner first brought out testimony concerning the lie detector test during his own direct testimony. The questions asked on cross-examination by the prosecutor, then, were properly within the scope of direct examination, and any objection to them would have been futile. Counsel was not ineffective in failing to make futile objections. *Carpenter II,* 617 A.2d at 1266–1267; PCRA Opinion at 12.

### Issue (9)

■■ The next contention raised by petitioner is that trial counsel was ineffective for failing to object to a statement made by the prosecutor in his closing argument that the prosecution and defense counsel had an agreement that whoever killed Taylor was

guilty of first degree murder. Actually, as noted by the Supreme Court of Pennsylvania, the statement was a fair comment on the evidence, made in response to the defense raised, by petitioner.

The actual statement made by the prosecutor was: "... between Mr. Flinchbaugh and myself, there is not much to debate. Whoever killed Jimmie Lee Taylor is guilty of murder in the first degree." *Carpenter II*, 617 A.2d at 1267. Considering petitioner's defense, this is a fair comment on the evidence. Petitioner testified that Emmil stabbed Taylor without provocation, *Carpenter I*, 515 A.2d at 533; Emmil testified that petitioner stabbed Taylor without provocation, *Carpenter I*, 515 A.2d at 532. If the jury believed petitioner's testimony, Emmil would be found guilty of first degree murder; if the jury believed Emmil's testimony (as it did), petitioner would be found guilty of first degree murder. Again, any objection would have been futile, and counsel is not ineffective for failing to make futile objections.

### *Issue (10)*

Petitioner next contends that trial counsel was ineffective for failing to object to the trial court's omission of a charge on a potential verdict of second degree murder. A charge of second degree murder was not warranted based on the evidence presented at trial.

Under Pennsylvania law, second degree murder is defined as follows: "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.Cons. Stat.Ann. 2502(b). "Perpetration of a felony," for purposes of this section, is: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.Cons.Stat.Ann. § 2502(d).

The "felony" to which petitioner refers is "a felonious aggravated assault." Petition at 11, § J (caption). As noted by the PCRA court, aggravated assault is not among the felonies set forth in § 2502(d). Moreover, the only aggravated assault possibly related to the case was the killing itself, making the aggravated assault a lesser included offense, not a separate felony. *See Com. v. Jones*, 427 Pa.Super. 345, 629 A.2d 133, 136–137 (1993) (lesser included offense merges with greater crime under the *"Weakland/Williams* analysis").

▇▇ Under Pennsylvania law, two offenses merge when the same acts which constitute the individual elements of one crime are the same acts which constitute the elements of the second crime. This principle recently was restated by the Supreme Court of Pennsylvania. *Com. v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994). In *Anderson*, the defendant was convicted of aggravated assault, attempted murder, and possession of an instrument of a crime. The trial court imposed consecutive sentences for each crime. The issue presented on appeal was whether the crimes of aggravated assault and attempted murder merge for sentencing purposes. *Anderson*, 650 A.2d at 20–21.

The Supreme Court applied a combination legal/factual analysis. It broke each crime into its elements, i.e. the requisite act and level of intent. It then looked at the specific facts of the case to see if the same act supported the element of the crime. For aggravated assault (act element: infliction of serious bodily injury, 18 Pa.Cons.Stat.Ann. § 2702(a)(1)), the defendant's act was shooting the victim, which rendered her a quadriplegic. For attempted murder (act element: substantial step towards an intentional killing, 18 Pa.Cons.Stat.Ann. §§ 901, 2502(a), 2502(d)), the defendant's act again was shooting the victim. The Supreme Court concluded that, based upon this analysis, the two offenses merged, and remanded for resentencing. *Anderson*, 650 A.2d at 24–26.

▇▇ In the instant case, petitioner was convicted of stabbing Taylor. The only act in question is the *stabbing*. That act would constitute the act element of both the murder charge and the aggravated assault charge proffered by petitioner.

Consistent with *Anderson*, then, and the earlier cases discussed therein,[12] the evidence presented at trial did not support an instruction regarding second degree murder, and trial counsel was not ineffective in failing to object to the lack of such a charge.

### Issue (11)

Petitioner's next contention is that trial counsel was ineffective for failing to object to the trial court's omission of a charge regarding a potential verdict of third degree murder based upon voluntary intoxication. This issue was reviewed by both the PCRA court and the Supreme Court of Pennsylvania. Both concluded that, while there was evidence that petitioner had been drinking and had smoked a marijuana cigarette, there was no evidence to support a conclusion that petitioner was intoxicated. In fact, petitioner's own testimony was to the contrary. There is no ineffectiveness in failing to request a charge which is not supported by the evidence. *See Carpenter II,* 617 A.2d at 1268; PCRA Opinion at 15–20.[13]

### Issue (12)

The final contention raised in petitioner's original petition for a writ of habeas corpus is that trial counsel was ineffective for failing to object to the trial court's instruction concerning aggravating and mitigating circumstances, and the imposition of the death penalty. Petitioner's argument in this respect is that the Pennsylvania death penalty statute is unconstitutional, apparently because of its purportedly mandatory nature. *See* Petition at 13 § L and caption. This contention has been rejected directly by the Supreme Court of the United States, which found the statute to be constitutionally valid. *Blystone v. Pennsylvania,* 494 U.S. 299, 308, 110 S.Ct. 1078, 1084, 108 L.Ed.2d 255 (1990). Again, there can be no ineffectiveness in failing to make a futile objection.

### Issue (13)

The first contention set forth in petitioner's amended petition for a writ of habeas corpus is that trial counsel was ineffective for failing to request jury instructions on two available mitigating circumstances, extreme mental or emotional disturbance and duress. *See* 42 Pa.Cons.Stat.Ann. § 9711(e)(2) and (5), respectively. Actually, the jury was instructed regarding these mitigating circumstances. Notes of Trial Testimony, Volume V (Sentencing Hearing conducted January 20, 1984, at 5:30 p.m.), at 35, 38–40; *Carpenter I,* 515 A.2d at 533.

### Issue (14)

Petitioner again argues that trial counsel was ineffective for failing to object to the trial court's instruction concerning duress as a mitigating factor. For the reasons stated in Issue (4), above, this argument is rejected.

### Issue (15)

Petitioner again argues that trial counsel was ineffective for failing to object to the purportedly erroneous answer of the trial court to the jury's question concerning recommending a sentence of life in prison without parole. Since the issue is a repetition of that stated in Issue (5), above, this argument is rejected. *But see* Issue (5), above (permitting further briefing for purposes of consideration of the applicability of *Simmons, supra,* to petitioner's case).

### Issue (16)

Petitioner next contends that trial counsel was ineffective for failing to call to testify at trial an eyewitness whose testimony would have corroborated petitioner's version of events. A witness by the name of Frankie Stewart gave a statement to the police that she saw Emmil make a motion with her hand, and that the victim then fell to the ground. Petitioner argues that this testimo-

---

12. The analysis of the Supreme Court of Pennsylvania in *Anderson* entailed a reexamination of the holdings in *Com. v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989), and *Com. v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989), to which the court in *Jones* referred as the "Weakland/Williams analysis."

13. The latter is a particularly thorough review of the evidence presented both at trial and the PCRA hearing.

ny would have bolstered his defense that Emmil, and not petitioner, stabbed Taylor.

■ The Commonwealth contends that this issue was procedurally defaulted through petitioner's failure to present the argument to the state courts. As discussed above, the question here is one of exhaustion, not procedural default. A failure to present a federal constitutional issue to the state courts is a failure to exhaust state remedies; failure to present the issues in the proper manner, although they are presented, so that the state courts do not consider the merits of the claim, but have an independent and adequate state ground to deny the claim (i.e. the state's procedural rules), is a procedural default. There is no indication that petitioner did not follow the Pennsylvania Rules of Criminal Procedure in presenting his claims to the state courts. Rather, the Commonwealth argues that the issue was never presented to the state court in any manner. The question, therefore, is one of failure to exhaust state remedies.

■ As discussed at length above, the rationale underlying each of the forms of waiver, the exhaustion doctrine, procedural default, and the abuse of the writ doctrine, is virtually identical to the two other forms of waiver. Moreover, the procedural posture of the case, in which a court before which issues should be raised is not given an opportunity in the first instance to consider the issues, also is analogous for each form of waiver. The standard for consideration of a federal constitutional issue despite procedural default or abuse of the writ is cause and actual prejudice. As a matter of consistency, as well as the considerations of comity discussed above, the proper standard for consideration of a federal constitutional issue despite failure to exhaust state remedies is cause and actual prejudice.[14]

■ Petitioner argues that the cause of his failure to present this issue to the state courts was the ineffectiveness of his counsel on direct appeal and in the PCRA proceed-

ings. Whether counsel was ineffective on direct appeal for failing to raise a particular constitutional issue is immaterial, since the issue still could be presented in the PCRA proceedings. Since the right to counsel did not attach to the PCRA proceedings, there can be no claim of ineffective assistance of counsel, and petitioner has shown no cause to excuse his failure to present the issue of the failure to call the eyewitness to the state courts.

■ Although we do not reach the question of actual prejudice because we find that petitioner cannot show cause for the failure to exhaust his state remedies, the analysis does not end with such a finding. A court may still consider a claim despite a failure to show cause because "the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 494–495, 111 S.Ct. at 1470. The fundamental miscarriage of justice standard requires that the petitioner supplement a federal constitutional claim with "a colorable claim of factual innocence." *McCleskey*, 499 U.S. at 495, 111 S.Ct. at 1471 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). A "colorable claim of factual innocence" is demonstrated when the petitioner "show[s] a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt." *Kuhlmann*, 477 U.S. at 454 n. 17, 106 S.Ct. at 2627 n. 17 (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970)).

■ It cannot reasonably be disputed that the jury's verdict in petitioner's case was contingent upon witness credibility, in partic-

---

14. It should be noted that this standard is consistent with those instances in which the Third Circuit has excused failure to exhaust state remedies, as set forth in *Wise, supra,* 958 F.2d at 33 n. 6, in which each of the causes are matters that are external to the petitioner, as required before procedural default or abuse of the writ may be excused. *See Coleman,* 501 U.S. at 752–754, 111 S.Ct. at 2566–2567, 115 L.Ed.2d at 671; *McCleskey,* 499 U.S. at 493–494, 111 S.Ct. at ——.

ular Emmil and petitioner. *See Carpenter I,* 515 A.2d at 533 ("The jury believed Ms. Emmil's version of the stabbing, and returned a verdict of guilty of murder of the first degree ..."); Commonwealth's Memorandum of Law at 3 ("... the bottom line is that petitioner's girlfriend was the Commonwealth's chief eyewitness to the killing with the underlying defense strategy being to discredit her and to have the defendant persuade the jury by his testimony that she, the girlfriend, was the killer and not he. The jury heard all the testimony, accepted the Commonwealth's witnesses' versions as truth ..."). Emmil testified that petitioner was the killer. Testimony also was elicited from Emmil to the effect that she did not have a police record. Her testimony had a high degree of credibility.

Petitioner, on the other hand, was a convicted murderer prior to the killing of Taylor, and the jury was aware of that fact. Petitioner's testimony, therefore, had a considerably lower degree of credibility than that of Emmil. In order for the jury to believe petitioner's version of events, corroborating testimony was crucial. No such testimony was offered, although it apparently existed. Moreover, the corroborating testimony would have supported petitioner's recitation of events exactly as he stated they happened. This corroboration can be contrasted with the corroboration offered by the Commonwealth in the form of circumstantial evidence that petitioner had offered a third party $500.00 to kill Taylor. According to the police report, this witness actually described the physical activity of the actors immediately prior to the death of Taylor, as opposed to a statement from which motivation can be inferred.

If this witness had testified as proffered by petitioner, there is no question that the testimony would have strongly bolstered petitioner's version of events. We find, then, that petitioner has made a colorable claim of factual innocence, and that failure to consider the issue presented would result in a fundamental miscarriage of justice.

Of course, since the witness never testified, the exact nature of the testimony is not a part of the record, nor is the reason for the failure to call the witness at trial. We will afford the parties an opportunity to address the merits of this issue and, if necessary thereafter, will hold an evidentiary hearing pursuant to Rule 7 of the Rules Governing § 2254 Cases.

### *Issue (17)*

■ Petitioner contends that trial counsel was ineffective in failing to object to a statement by the prosecutor, during his closing argument in the death penalty phase of the trial, that petitioner "had his chance," having previously been released on parole from a conviction for third degree murder.

Actually, the statement made by the prosecutor was in the context of the aggravating circumstance which the Commonwealth was arguing was the basis for imposition of the death penalty, i.e. petitioner's significant history of felony convictions which involved the use or threat of violence. In full, the statement and its context were as follows:

As an attorney for the people of the State, I am arguing to you now that the Commonwealth has proved the aggravating circumstances of the history of violent crimes in this Commonwealth on the part of the Defendant. The Defendant has murdered before. I argue to you that is aggravating circumstance that you might consider. What could be more aggravating circumstance? The Defendant had his chance. Thank you.

Notes of Trial Testimony, Volume V at 33–34. Nothing in the quoted provision indicates that the prosecutor was arguing that petitioner should have the death penalty imposed due to commission of the crime while petitioner was on parole. The message conveyed actually is that petitioner did not learn from having been convicted of murder the first time. The statement by the prosecutor simply does not convey the message which petitioner contends is conveyed.

### *Issue (18)*

■ Petitioner next contends that the trial court's instructions failed to allow the jury to consider all of the relevant mitigating factors under § 9711(e). As noted by the

Supreme Court of Pennsylvania, the trial court instructed the jury concerning the mitigating factors set forth in § 9711(e)(2), (5), and (8). These mitigating factors were those for which there was supporting evidence in the record.

Moreover, the trial court specifically instructed the jury that it should consider "any other mitigating matter concerning the character or record of the Defendant or the circumstance of his offense." Notes of Trial Testimony, Volume V at 35. The trial court also specifically instructed the jury that the death penalty was an appropriate sentence only if the jury found "one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases your verdict must be a sentence of life imprisonment." Notes of Trial Testimony, Volume V at 36.

Contrary to petitioner's contention, these instructions accurately directed the jury to the proper analysis to be undertaken as well as the appropriate factors to be applied in undertaking that analysis.

### Issue (19)

 Petitioner argues that the testimony of a parole officer concerning petitioner's status as a parolee at the time of the murder impermissibly directed the jury's attention toward the fact of parole and away from the proper aggravating and mitigating circumstances.

As discussed above, the trial court properly instructed the jury concerning aggravating and mitigating circumstances. To argue that, despite these instructions, the jury did not apply the correct considerations is speculative at best. Moreover, the testimony concerning petitioner's parole status were isolated references, not used by the prosecutor in his closing argument to support a death penalty verdict. There was not any sort of repeated references to the parole status permeating the trial proceedings such as would support petitioner's argument.

### Issue (20)

Petitioner next contends that trial counsel was ineffective for failing to argue available

mitigating factors to the jury. Contrary to the amended petition, the factors of duress and extreme mental or emotional disturbance were presented to the jury. *See* Notes of Trial Testimony, Volume V at 2–31 (closing argument of defense counsel), and 39–40 (instruction by the trial court). We have noted previously that the evidence did not support a finding of voluntary intoxication, and petitioner was not entitled to such a charge. *See* Issue (11), above. Failure to make argument concerning the latter mitigating circumstance also would not constitute ineffective assistance, based upon the lack of evidence upon which to base such an argument.

We have also addressed previously the adequacy of the court's instructions concerning mitigating factors. *See* Issue (18), above.

### Issue (21)

Petitioner contends that trial counsel was ineffective for failing to object to improper voir dire questions by the Commonwealth concerning prospective jurors' attitudes toward the death penalty. Petitioner argues that the voir dire questions "went beyond the constitutionally permissible inquiry allowed by the decision of the United States Supreme Court in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776[, *reh'g denied,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186] (1968) ..." Amended Petition at 8.

Petitioner provides no factual support for this contention.

### Issue (22)

Petitioner next contends that trial counsel was ineffective for failing to challenge the exercise of the Commonwealth's peremptory challenges during jury selection. Again, petitioner refers to no part of the record to provide factual support for this contention.

### Issue (23)

Petitioner's next contention is that trial counsel was ineffective for failing to argue to the jury that Taylor's prior assault on petitioner constituted a mitigating circumstance. Actually, counsel did argue to the jury concerning the prior assault by Taylor, arguing that the emotional effect upon petitioner con-

stituted a mitigating circumstance. Notes of Trial Testimony, Volume V at 30. Further, the trial court discussed the prior assault and its effect upon petitioner when it charged the jury concerning mitigating circumstances. Notes of Trial Testimony, Volume V at 38–39. Counsel was not ineffective, as the argument and the charge in fact were made.

### Issue (24)

■ Finally, petitioner contends that trial counsel was ineffective for failure to present evidence, to argue to the jury, and to request a jury instruction regarding mitigating factors recognized in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *Penry* involved the imposition of the death penalty upon a defendant who was (1) mentally retarded, (2) abused as a child, and (3) of limited ability socially and emotionally.

Petitioner makes no showing of cause to excuse the failure to present this claim to the state courts. Nor is there a showing of a substantial miscarriage of justice if the claim is not considered by this court, as petitioner makes no showing of factual support for the claim. Finally, petitioner makes no showing that counsel should have predicted this holding by the Supreme Court of the United States five years before the *Penry* opinion was issued.

### III. COMMONWEALTH'S MOTION FOR RECONSIDERATION/PETITIONER'S MOTION TO DISMISS THE MOTION FOR RECONSIDERATION

Based upon the foregoing, the Commonwealth's motion for reconsideration is rendered moot. As noted, we will direct further briefing, and the only factual issues remaining would involve petitioner's trial counsel, not his PCRA counsel. As our earlier scheduling orders are vacated by a new scheduling order, there would be no reason to reconsider the earlier order. For the same reasons, the motion to dismiss the motion for reconsideration[15] also is rendered moot by this memorandum and the accompanying order. Both motions will be denied.

15. More properly denominated a motion to deem the motion for reconsideration withdrawn. *See*

We will, however, vacate our order directing notice to petitioner's counsel of the availability of petitioner's PCRA counsel for deposition. As discussed above, there is no right to counsel on post-conviction collateral proceedings, and testimony of PCRA counsel would not affect consideration of the merits of petitioner's claims.

### IV. TRIAL RECORD

Petitioner contends in his amended petition that certain documents which are part of the trial record are incorrect and unreliable. No factual support for this contention is provided in the amended petition. If petitioner wishes to pursue this claim, the contention shall be explained in the brief to be submitted on the remaining issues.

### III. CONCLUSION

Having reviewed the claims presented by petitioner, we find that two, those denominated Issue (5) and Issue (16), merit further consideration. The remaining claims will be dismissed. Further briefing on the remaining issues will be directed by the court. Moreover, the motion for reconsideration and the motion to dismiss the motion for reconsideration will be denied as moot.

An appropriate order shall issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. All of petitioner's claims, denominated Issue (1) through Issue (24), inclusive, are dismissed, save Issue (5) and Issue (16), which will be considered further by the court.

2. The parties are directed to file briefs in support of their respective positions on Issue (5) and Issue (16), addressing the following sub-issues:

(a) Does the holding of *Simmons v. South Carolina,* —— U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), apply retroactively to the instant case, consistent with *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 *reh'g denied,* 490

Local Rule for the Middle District of Pennsylvania 7.5.

U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989)?

(b) Assuming that *Simmons* applies to petitioner's claims, does *Simmons* require reversal of petitioner's sentence based upon the trial court's answer to the jury question during the penalty phase?

(c) Does the failure of trial counsel to call a witness who would have corroborated petitioner's version of events on the night of the murder constitute ineffective assistance of counsel requiring reversal of petitioner's conviction?

3. Petitioner's brief on the sub-issues set forth in ¶ 2 shall be filed on or before December 21, 1994.

4. The Commonwealth shall respond to petitioner's brief on or before January 13, 1995.

5. For purposes of the briefs required under ¶¶ 2–4 of this order, the 15–page limit set forth in Local Rule for the Middle District of Pennsylvania 7.8 shall not apply.

6. No further briefs shall be filed without leave of court.

7. An evidentiary hearing, if necessary, will be scheduled following consideration of the parties' briefs.

8. All prior scheduling orders are vacated.

9. Our Order of Court dated July 21, 1994, requiring notice to current counsel for petitioner regarding the availability of petitioner's PCRA counsel for deposition is vacated.

10. The Commonwealth's motion (record document no. 48) for reconsideration of the Order of Court dated July 21, 1994, is denied as moot.

11. Petitioner's motion (record document no. 55) to dismiss the Commonwealth's motion for reconsideration is construed as a motion to deem the motion for reconsideration withdrawn, and is denied as moot.

12. Petitioner shall in his brief address and support his contention that the trial record, as filed with this court, is incorrect and unreliable. Failure to provide a factual basis for this claim will lead to its dismissal.

13. Notwithstanding ¶ 1 of this order, petitioner is granted leave to renew Issue (21) and Issue (22), should factual bases for those claims be established. Failure to provide factual bases for these claims will lead to final dismissal of the claims.