659 A.2d 1024

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Luis VIERA, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 23, 1995.

Filed June 1, 1995.

Patrick J. Connors, Asst. Public Defender, Media, for appellant.

William H. Ryan, Jr., Dist. Atty., Media, for Com., appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Delaware County following appellant's conviction on the charge of delivery of a controlled substance.[1] Herein, appellant asserts that the lower court erred in allowing the Commonwealth's rebuttal witness to testify that he was appellant's parole agent and met with him in that capacity during the time appellant alleged that he was living in New York City. Further, appellant maintains that the court below erred in imposing a sentence based upon its finding that appellant had induced his alibi witnesses to perjure themselves. Upon review, we affirm.

At appellant's jury trial, Detective Michael Honicker of the Delaware County Criminal Investigation Division testified that a confidential informant had made arrangements for appellant to sell cocaine to the detective in the City of Chester on

1. 35 P.S. § 780–113(a)(30).

January 8, 1993. Trial N.T. 3/24/94 at 112. Detective Honicker testified that at approximately 5:00 p.m. on that date, appellant entered the detective's vehicle and sold 3.0 grams of cocaine to him for $150.00. Trial N.T. 3/24/94 at 114–15, 147. The Commonwealth asked the detective whether he had any doubt as to whether appellant sold cocaine to him on January 8, 1993. To that question, Detective Honicker replied that he was positive in his identification of appellant as the person who sold cocaine to him. Trial N.T. 3/24/94 at 120. On cross-examination by defense counsel, Detective Honicker testified that he and appellant were "face to face" in his vehicle for five to ten minutes and that he was able to observe appellant perfectly. Trial N.T. 3/24/94 at 127–29.

Detective Michael Boudwin of the Delaware County Criminal Investigation Division, who provided backup to Detective Honicker at the time of the transaction, testified that he observed appellant enter Honicker's vehicle and sell drugs to him. Trial N.T. 3/24/94 at 157–59. On redirect examination, the Commonwealth asked Detective Boudwin whether he had any doubt as to whether appellant entered Detective Honicker's vehicle. To that question, Detective Boudwin replied as follows: "No, there's no doubt in my mind whatsoever." Trial N.T. 3/24/94 at 164.

In support of his alibi, appellant called his fiance, Evelyn Beltran, and a former employer, Roberto Meldenaro, to testify that appellant was in New York City when the drug transaction occurred in Chester. Trial N.T. 3/24/95 at 167, 175. Ms. Beltran testified that appellant was in New York City every day of January, 1993, with the exception of the 12th. Trial N.T. 3/24/94 at 170–71. Mr. Meldenaro was the superintendent of the apartment complex in which Ms. Beltran resided. Mr. Meldenaro stated that appellant worked for him as a helper from the beginning of January, 1993, to the middle of February, 1993. Mr. Meldenaro testified that appellant worked with him on January 8, 1993, from 8:00 a.m. to 5:00 p.m., and that January 12, 1993, was the only date which appellant missed from work during the entire period of employment. Trial N.T. 3/24/94 at 176–78, 181–82. At trial, Mr.

Meldenaro did not have any employment records or pay stubs with him to substantiate his testimony that appellant worked with him on January 8, 1993. Trial N.T. 3/24/94 at 178–79.

In rebuttal of the testimony offered by defense's alibi witnesses, the Commonwealth called Brian Bray to the witness stand. Before questioning Mr. Bray, the Commonwealth requested that the court hold a side-bar conference. Trial N T. 3/24/94 at 183. At side-bar, the following discussion occurred:

[ADA]: I wanted to come to side-bar in an overabundance of caution. My rebuttal witness is Brian Bray the parole officer. He is going to testify that he was actually with Luis Viera on the 4th, the 6th, the 7th, the 11th, the 12th, 13, 19, 20, 25, 26, 27, in his office. He sat across the table from him. He also has treble forms which Luis Viera filled out on the days that he was to be in New York. The only days he was to be in New York was from the 12th to the 18th, that was it. This was filled out in front of Brian Bray in his presence.

The Court: Okay.

[ADA]: That's what I wanted to present.

The Court: That's proper rebuttal.

[End of side-bar conference]

Trial N.T. 3/24/94 at 183–84.

On direct examination, Mr. Bray stated that he was a parole agent of the Pennsylvania Board of Probation and Parole and that he knew appellant. Trial N.T. 3/24/94 at 185. The Commonwealth asked Mr. Bray whether he met with appellant in January of 1993. Mr. Bray responded in the affirmative. Defense counsel subsequently objected and requested that the court hold a side-bar conference. Trial N.T. 3/24/94 at 185–86. At side-bar, the following discussion transpired:

[Defense counsel]: Now, I agree that it's proper rebuttal is this was to say simply that he was—he saw Mr. Viera in a different location on a given day. It is not proper rebuttal for the jury to hear that he is a state parole officer and he knows Mr. Viera.

354

The Court: Oh, I don't ...

[Defense counsel]: I don't know if that's telling ...

The Court: That's overruled. You—I think any witness who—if this is to rebut Mr. Meldenaro who, if this guy is right, perjured himself and if he did, I want this guy prosecuted. I think the nature—that's the evidence you've put on and the guy has to be identified. He can't be just cloaked. The jury has a right to hear who he was and what the circumstances are and weigh that.

[Defense counsel]: What this other fellow did is on his shoulders and ...

The Court: That is put in your case and she (ADA) has a right to rebut it. Overruled.

[End side-bar conference]

Trial N.T. 3/24/94 at 186–87.

Thereafter, Mr. Bray testified as follows:

[ADA]: If I may, sir, calling your attention to January of 1993, did you have an occasion to meet with this Defendant, Luis Viera, during that month?

[Bray]: Yes, I did.

[ADA]: Would you please indicate on what dates in the month of January you met with Luis Viera?

[Bray]: The following dates ...

[ADA]: I'm sorry, before I proceed, sir, where would you have met him?

[Bray]: I had met with him at 1416 Upland Street, Chester, Pennsylvania, State Board of Parole Office, Chester District office.

[ADA]: Would that meeting have been face to face?

[Bray]: Yes, it would.

[ADA]: Okay, would you please resort to your record, sir, and indicate what dates in January of 1993 you met with Luis Viera?

[Bray]: Personally, I met with him on the following dates: 1–4 of '93, 1–11 of '93, 1–19 of '93, and 1–25 of '93.

[ADA]: Did you speak with him on other dates during the course of that month?

[Bray]: I believe I spoke with him on the sixth over the phone.

\* \* \* \* \* \*

[ADA]: I'm showing you, sir, what's been marked Commonwealth Exhibit "C7". Can you identify this document, sir, for the record?

[Bray]: Yes, this document is our District Office Travel Permission, written travel permission.

[ADA]: What is that? What is that?

[Bray]: Whenever a client under our supervision wishes to leave the district that we supervise which is Delaware and Chester County, they must get written permission from us in the form of our own Travel Permission Form.

[ADA]: Okay. And what does that document reflect? Whose name is on that document?

[Bray]: Luis Viera.

[ADA]: And where does it say he's going?

[Bray]: To 1500 Popham Avenue, New York, New York.

[ADA]: And what are the dates of that, sir?

[Bray]: 1–12–93 to 1–18 of '93.

Trial N.T. 3/24/94 at 187–89.

Upon evaluation of the testimony presented by the parties, the jury found appellant guilty of delivery of a controlled substance. Trial N.T. 3/24/94 at 227.

The sentencing hearing was held on March 28, 1994. At that hearing, the Commonwealth offered testimony revealing that appellant was engaged in a continuing series of violations of the Controlled Substance, Drug, Device and Cosmetic Act. Sentencing N.T. 3/28/94 at 4–6. The court sentenced appellant to a term of imprisonment of five (5) years to ten (10) years with restitution in the amount of $150.00. Sentencing N.T. 3/28/94 at 8. In arriving at its sentencing decision, the court considered the circumstances of the case as follows:

The Court: Okay. Mr. Viera, let me suggest, also, it's not only the concern I have for all of the drug dealing. But I think it's patently clear to me that two of your witnesses came in and perjured themselves. And while you didn't perjure yourself, obviously, they did. You were certainly not in New York at the time of this occurrence. And that was patently clear. And I hope the other two people who showed up and testified for you, I can't believe that you didn't have something to do with that. So I just have no sympathy for—I guess I have to have sympathy for someone who sits silent and doesn't get on the stand. But for someone who has obviously prostituted the Court and allowed two witnesses to come up and lie on the stand, that bothers me to no end . . .

Sentencing N.T. 3/28/94 at 7.

On April 26, 1994, appellant timely filed a notice of appeal. On August 9, 1994, the lower court issued an opinion in support of the judgment of sentence.

Herein, appellant raises two issues for our examination:
I. WHETHER THE SENTENCING COURT ERRED WHEN IT SENTENCED APPELLANT BASED UPON IT SPECULATIVE AND UNSUPPORTED BELIEF THAT APPELLANT HAD INDUCED HIS WITNESSES TO PERJURE THEMSELVES DURING THE COURSE OF THE TRIAL.
II. WHETHER THE TRIAL COURT ERRED WHEN IT OVERRULED THE OBJECTION OF APPELLANT TO THE TESTIMONY OF THE COMMONWEALTH'S REBUTTAL WITNESS THAT HE WAS A PAROLE AGENT OF THE PENNSYLVANIA BOARD OF PROBATION AND PAROLE AND THAT HE KNEW APPELLANT.

Appellant's Brief at 7.

We begin our analysis by addressing appellant's latter contention. The crux of appellant's challenge to the evidentiary ruling is that Mr. Bray's testimony was unfairly prejudicial because the jury was apprised that appellant had engaged in

prior criminal activity, and that he was thus stripped of the presumption of innocence.

"A trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and [an appellate] [c]ourt will reverse only for clear abuse of that discretion." *Commonwealth v. Foy*, 531 Pa. 322, 325, 612 A.2d 1349, 1351 (1992), *citing, Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319 (1988); *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639 (1982). "Admission of rebuttal evidence is a matter within the sound discretion of the trial court." *Commonwealth v. Jones*, 530 Pa. 591, 616, 610 A.2d 931, 943 (1992), *citing, Commonwealth v. Miller*, 490 Pa. 457, 471, 417 A.2d 128, 136 (1980). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Kubiac*, 379 Pa.Super. 402, 409, 550 A.2d 219, 223 (1988), *appeal denied*, 522 Pa. 611, 563 A.2d 496 (1989). An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant. *See Commonwealth v. Wharton*, 530 Pa. 127, 144–46, 607 A.2d 710, 719 (1992).

"It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as *substantive evidence* of his guilt of the present charge." *Commonwealth v. Carpenter*, 511 Pa. 429, 437, 515 A.2d 531, 535 (1986) (citations omitted) (emphasis added). "To warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Id.* at 437, 515 A.2d at 535 (citations omitted).

In *Carpenter, supra*, 511 Pa. 429, 515 A.2d 531, a parole officer was called to the stand by the Commonwealth for the purpose of establishing the offense of which the defendant was charged. The parole officer stated that he was an agent of the Pennsylvania Board of Parole and that he knew the defendant. Moreover, the parole officer testified as to a conversation he

had with the defendant of which the Commonwealth introduced to establish defendant's motive for committing murder of the first degree. *Id.* at 435–37, 515 A.2d at 534. In *Carpenter,* our supreme court determined, "the mention of the witness' occupation as a parole officer and the fact that he knew the [defendant] did not convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense or record." *Id.* at 437, 515 A.2d at 535. *See Commonwealth v. Martin,* 395 Pa.Super. 244, 253–55, 577 A.2d 200, 205 (1990), *affirmed,* 527 Pa. 404, 592 A.2d 683 (1991) (police officer's testimony that defendant "had a previous incident" did not convey to the jury the fact of a prior criminal offense).

In the case at bar, detectives Honicker and Boudwin testified on behalf of the Commonwealth to establish that appellant delivered cocaine on January 8, 1993. Both detectives unequivocally identified appellant as the person who sold cocaine to Detective Honicker on that date. Appellant called his fiance, Ms. Beltran, and a former employer, Mr. Meldenaro, to testify in support of his alibi defense. Ms. Beltran and Mr. Meldenaro testified that appellant was in New York City when the drug transaction occurred in Chester on January 8, 1993, and both stated that the 12th was the only date during this month which they could not account for appellant's whereabouts. To challenge the credibility of the testimony elicited by Ms. Beltran and Mr. Meldenaro, the Commonwealth called Mr. Bray to the stand. Mr. Bray stated that he was a parole agent and that he knew appellant. Mr. Bray then testified as to the dates in January of 1993, that he and appellant met and the dates during this month in which appellant was allowed to leave the district unsupervised. The trial court found that Mr. Bray's testimony was proper because it was used for the purpose of rebutting the alibi witnesses' testimony that appellant was in New York City every date in January of 1993, with the exception of the 12th. Moreover, the lower court determined that sanitizing the witness' identity was not possible since his credibility was of paramount concern. Trial Opinion 4/9/94 at 4. Under the particular circumstances presented in

this case, we conclude that the lower court did not abuse its discretion in admitting the testimony of Brian Bray.

 Even assuming *arguendo* that the court below erred in its evidentiary ruling, we would deem that error harmless. "[T]here is no *per se* rule that requires a new trial for a defendant every time there is a reference to a prior criminal activity." *Commonwealth v. Wallace*, 522 Pa. 297, 308, 561 A.2d 719, 724–25 (1989) (new trial not warranted where the testimony did not relate to any specific past criminal act and the jury had no direct knowledge of the basis of that crime; evidence of defendant's guilt was overwhelming). "Where the statements may be termed merely 'passing references,' no reversal is warranted unless the record illustrates that the defendant has been prejudiced by the testimony." *Kubiac*, 379 Pa.Super. at 410–11, 550 A.2d at 224 (citation omitted) (new trial not warranted where the testimony included very brief and very generalized references to the alleged criminal activity).

Here, Mr. Bray did not elaborate as to the crime which caused appellant to serve parole. Further, upon examining the testimony elicited by the detectives in relation to the testimony offered by the alibi witnesses, we agree with the trial court's assessment that the former is credible and the latter is indeed suspect. We conclude that appellant was not prejudiced by the admission of Brian Bray's rebuttal testimony.

 We next address appellant's challenge to the discretionary aspects of the sentence imposed by the lower court. Initially, we note that appellant has set forth in his brief a concise statement of the reasons relied upon for allowance of appeal. *See* 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). We proceed to consider whether appellant has demonstrated the existence of a substantial question.

The determination of whether a particular issue constitutes a substantial question must be evaluated on a case by case basis. However, we will be inclined to allow an appeal

where an appellant advances a colorable argument that the [sentencing] judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Eicher,* 413 Pa.Super. 235, 269, 605 A.2d 337, 354 (1992), *appeal denied,* 533 Pa. 598, 617 A.2d 1272 (1992), *quoting, Commonwealth v. Losch,* 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987).

In his concise statement of the reasons relied upon for allowance of appeal, appellant contends that the lower court abused its discretion in imposing a sentence that was based upon the unsupported belief that appellant had induced his witnesses to perjure themselves. Although we are of the opinion that appellant's sentencing claim raises a substantial question, *compare Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587 (1992), *appeal denied,* 535 Pa. 615, 629 A.2d 1377 ("substantial question" raised where defendant argued that court did not have adequate reason for imposing sentence), we find it meritless.

 When evaluating the merits of sentencing claims, we are guided by the following standard as set forth by our court in *Commonwealth v. Clever,* 395 Pa.Super. 192, 194–96, 576 A.2d 1108, 1110 (1990) (citations omitted):

Sentencing is a matter vested in the sound discretion of the trial court and the lower court's judgment of sentence will not be disturbed by an appellate court absent an abuse of discretion. To constitute an abuse of discretion, a sentence must exceed the statutory limits or be patently excessive. When reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime.

 In the instant case, the court below sentenced appellant to a term of imprisonment of five (5) to ten (10) years. The crime of delivery of cocaine is a felony which carries a

maximum sentence of imprisonment of ten (10) years. 35 P.S. § 780–113(f)(1.1). The lower court did not impose a sentence that exceeded the statutory limits. Appellant had a prior record score of seven (7). R.12. The standard range of sentence for the crime of delivery of cocaine with a prior record score of six (6) is fifty-one (51) to sixty (60) months. 204 Pa.Code § 303.9, 42 Pa.C.S.A. § 9721. The court below sentenced appellant within the standard range of the guidelines. Irrespective of whether the sentencing court misconstrued appellant's role in the perjury of witnesses, we find no basis to disturb the sentence in view of the fact that appellant was engaged in a continuing series of drug dealings and had been convicted of other felonies. The lower court recognized appellant's criminal history and appropriately applied the sentencing guidelines in this case. Consequently, we find no abuse of discretion.

Having scrutinized appellant's points of error and finding that they do not avail relief to appellant, we, accordingly, affirm the judgment of sentence.

Judgment of sentence affirmed.

HUDOCK, J., files a Dissenting Opinion.

HUDOCK, Judge, dissenting:

I am unable to concur with the majority's conclusion that reversible error did not occur as a result of the testimony of the Commonwealth's rebuttal witness that he was a probation officer. Thus, I dissent. I would vacate the judgment of sentence and remand for a new trial.

In this drug case, the Commonwealth offered the testimony of Brian Bray in rebuttal. Mr. Bray stated that he was employed by the Pennsylvania Board of Probation and Parole and that he knew Appellant. Thereafter, the following testimony was elicited from Mr. Bray:

[District Attorney]. Calling your attention to January of 1993, did you have occasion to meet with [Appellant] in January of 1993?

362

[Mr. Bray]. Yes, I did.

\* \* \* \* \* \*

Q. If I may sir, calling your attention to January of 1993, did you have an occasion to meet with [Appellant] during that month?

A. Yes, I did.

Q. Would you please indicate on what dates in the month of January you met with [Appellant]?

A. The following dates ...

Q. I'm sorry, before I proceed, sir, where would you have met with him?

A. I had met with him at 1416 Upland Street, Chester, Pennsylvania, State Board of Parole Office, Chester District office.

Q. Would that meeting have been face to face?

A. Yes, it would.

Q. Okay, would you please resort to your record, sir, and indicate what dates in January of 1993 you met with [Appellant]?

A. Personally, I met with him on the following dates: 1–4 of '93, 1–11 of '93, 1–19 of '93, and 1–25 of '93.

Q. Did you speak with him on the other dates during the course of that month?

A. I believe I spoke with him on the sixth over the phone.

\* \* \* \* \* \*

Q. I'm showing you, sir, what's been marked Commonwealth Exhibit "C7". Can you identify this document, sir, for the record?

A. Yes, this document is our District Office Travel Permission, written travel permission.

Q. What is that? What is that?

A. Whenever a client under our supervision wishes to leave the district that we supervise which is Delaware and

Chester County, they must get written permission for us in the form of our own Travel Permission Form.

N.T., 3/24/94, at pp. 185–89.

I would find this exchange prejudicial to Appellant in that it clearly refers to prior criminal activity by Appellant and therefore denied him a fair and impartial trial. In *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986), our Supreme Court explained:

> In *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973) this court said: "It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. . . . 'The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.' " *Id.* at 452, 309 A.2d at 590 (quoting *Commonwealth v. Allen*, 448 Pa. 177, 181–182, 292 A.2d 373, 375 (1972)). In *Clark* we stated that a police officer's statement that the defendant had previously served time "in prison" implied a prior conviction for a serious offense, thus was prejudicial in that it permitted the jury to infer that the defendant had a prior criminal record. *To warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense.* In the case at bar *the mere passing reference to the appellant's confinement did not supply a sufficient basis for a reasonable inference of prior criminal activity* in view of the numerous crimes for which he was then on trial. The reference did not either expressly or by reasonable implication convey the fact of a prior criminal offense unrelated to the criminal episode for which he was then on trial.

*Id.* 515 A.2d at 535 (*quoting Commonwealth v. Banks*, 454 Pa. 401, 410–11, 311 A.2d 576, 581 (1973)) (emphasis in original).

In *Carpenter*, as in the present case, the appellant argued that his trial was tainted by the testimony of a Commonwealth witness employed by the Pennsylvania Board of Parole. The

agent, stating his occupation and affirming that he knew the appellant, "was called by the Commonwealth to testify as to a conversation he had with appellant in August, 1983 regarding his broken jaw, and his reluctance to identify his attacker to the police." *Id.* 511 Pa. at 436, 515 A.2d at 534. Despite the fact that the jury was told of the agent's occupation and that he knew the appellant, the Court held that such testimony "did not convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense or record[,]" since the jury was never told that the agent was actually the appellant's own parole officer. *Id.* 511 Pa. at 437, 515 A.2d at 535. The Court, in reaching this conclusion, stressed that there are many ways that the appellant may have come to know the parole officer. Thus, the Court concluded that little prejudice was caused by the agent's passing reference to his job as a parole officer.

In the case herein, like *Carpenter,* Mr. Bray did not actually state that he was Appellant's parole officer, but Mr. Bray's testimony ineluctably leads to the conclusion that Appellant had a prior criminal record. Mr. Bray stated that he actually met with Appellant at parole headquarters. Further, Mr. Bray explained that Appellant filled out a Travel Permission Form which is required to be filled out by every person under the parole board's supervision before a supervised person may travel. Clearly, a jury, by reasonable implication, could have found from these statements that Appellant had a prior criminal record. Thus, I would vacate the judgment of sentence and remand for a new trial.