J-A06028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIE JAMES LUNSFORD | : | |
| | : | |
| Appellant | : | No. 375 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 2, 2020
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000458-2019


BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                 **FILED:  JUNE 21, 2021**

Willie James Lunsford appeals from the judgment of sentence, entered in the Court of Common Pleas of Armstrong County, after a jury convicted him of criminal attempt to commit homicide,[1] conspiracy to commit robbery,[2] robbery with serious bodily injury to another,[3] robbery with threat to another of bodily injury,[4] robbery with bodily injury or threat,[5] terroristic threats,[6]

_____

[1] 18 Pa.C.S.A. § 901.

[2] 18 Pa.C.S.A. § 903.

[3] 18 Pa.C.S.A. § 3701(a)(1)(i).

[4] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[5] 18 Pa.C.S.A. § 3701(a)(1)(iv).

[6] 18 Pa.C.S.A. § 2706(a)(1).

firearms not to be carried without a license,[7] two counts of aggravated assault,[8] two counts of simple assault,[9] and three counts of recklessly endangering another person.[10] Upon review, we affirm.

In April of 2019, Lunsford and his two co-conspirators, Kanisha Croyle and her half-brother, Eric McKenzie, met to discuss and plan a potential "lick," or robbery of a drug dealer. *See* N.T. Jury Trial, 12/11/19, at 106-09. On April 17, 2019, Croyle met with Charles Lloyd at the apartment of a mutual friend, Ashley Poston, and agreed to start selling drugs on Lloyd's behalf. *Id.* at 114-22. On April 19, 2019, Croyle identified Lloyd to Lunsford and McKenzie as the target of their "lick." *Id.* at 122. At approximately 9:30 a.m. that morning, the trio arrived at Poston's apartment and, with Poston's permission, entered the building. *Id.* at 155-56. Lunsford then pointed a firearm at Poston and forced her up a flight of stairs to her apartment. Upon opening the door, Lunsford ordered everyone to the ground. *Id.* at 158. Lloyd attempted to stop the robbery by approaching Lunsford; Lunsford fired his weapon and shot Lloyd in the hand before fleeing the scene with McKenzie. *See id.* at 162-67. Following an investigation led by Pennsylvania State

---

[7] 18 Pa.C.S.A. § 6106.

[8] 18 Pa.C.S.A. § 2702(a)(1), (4).

[9] 18 Pa.C.S.A. § 2701(a)(3).

[10] 18 Pa.C.S.A. § 2705.

Trooper Michael Graham, the trio was arrested and charged with the above-stated offenses.

During trial, Trooper Graham testified about a snippet of video surveillance footage of Lunsford. Trooper Graham noted that, in the still frame of the video, he could see the apparent outline of a handgun in Lunsford's jacket. After the photograph was admitted into evidence, the following exchange occurred between the prosecutor and Trooper Graham:

Q: Did [] Lunsford have a firearms license for a gun?

A: He did not.

Q: **Is he allowed to have a firearms license for a gun?** *Let me rephrase that. Did you check all records to see if he had a license for the gun?*

A: He did not have a license for the gun.

(Commonwealth's Exhibit No. 59 was marked for identification.)

Q: I am showing you Commonwealth's Exhibit 59. Can you tell us what that is?

A: Yeah. That is a form, SP70039, which is information certification regarding [a] license to carry firearms. I filled this out with [Lunsford's] information[ and] sent it to the [] headquarters in Harrisburg, attention to the Firearms Division. They do an all[-]records check and certify and seal[ whether] they have a license[.] It says the subject—there [are] checkboxes for all of them.

Q: It certifies he does not have a license to carry?

A: Yes.

Q: Would an individual need a license to carry a handgun in Pennsylvania?

A: Yes.

N.T. Jury Trial, 12/12/19, at 45-48 (emphasis added).  Counsel for Lunsford moved for a mistrial, which the court denied,[11] before Trooper Graham continued his testimony as follows:

Q:  In Pennsylvania, is a 9[-]millimeter [handgun] required to be licensed?  Are you required to have a license to carry it and conceal it?

A:  Yes.  If you want to conceal it, you have to have a license.

Q:  How was it then that you were able to identify [] McKenzie?  I mean, you see the footage, you get a face, but how are you then able to identify who he actually is?

A:  Through mainly Ralph Straffon and Linda Baker, their interview—that was our initial—how we got to identify him. A corporal that works with Beaver barracks was familiar with him.

Q:  You went on a search for the vehicle?

A:  Yes.

Q:  Found the vehicle owner?

A: Yes.

Q:  And that led you to [] McKenzie?

A:  Yes.

_____

[11] Specifically, Lunsford's counsel argued that, by asking whether Lunsford was "allowed to have a gun," the Commonwealth "suggest[ed] . . . that they wouldn't want to allow him to have [one].  In [Armstrong] [C]ounty[,] gun ownership is very high and people understand that . . . you can't have one if you are a convicted felon."  N.T. Jury Trial, 12/12/19, at 48.  In denying the motion for the mistrial, the court noted that the question was immediately rephrased, was not answered, and did not infer the existence or nonexistence of any fact.  ***See id.***

***Id.*** at 49-50. Thereafter, counsel for Lunsford made a second motion for a mistrial, which was also denied.[12]

Ultimately, the trial court sentenced Lunsford to 20-40 years' imprisonment on the charge of attempted homicide with no further penalty on the remaining counts. Lunsford timely appealed to this Court. Both Lunsford and the trial court complied with Pa.R.A.P. 1925. Lunsford raises the following issues for our review:

> 1. Did the trial court abuse its discretion when it denied [Lunsford]'s motion for a mistrial upon the Commonwealth attempting to elicit testimony regarding [Lunsford]'s prior bad acts from a police witness when the prosecutor specifically asked said witness whether [Lunsford] was a person prohibited by law to possess a firearm license?
>
> 2. Did the trial court abuse its discretion when it denied [Lunsford]'s motion for a mistrial upon the Commonwealth eliciting testimony from its police witness that [Lunsford]'s co-defendant[, McKenzie], was able to be located by police due to the fact that he was a person well known to local police in his home[]town?

Brief of Appellant, at 7.

In both issues on appeal, Lunsford challenges the trial court's decision to deny him a mistrial. The award of a mistrial is an "extreme remedy" that may be granted "only where the incident upon which the motion is based is of

---

[12] Counsel for Lunsford argued that, where Trooper Graham testified that a corporal in Beaver County was "familiar" with McKenzie, "the inference could easily be made by the [j]ury that—I would guess that the only reason the corporal was familiar with [] McKenzie is because of his past criminal history." N.T. Jury Trial, 12/12/19, at 50.

such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *See Commonwealth v. Bryant*, 67 A.3d 716, 727-28 (Pa. 2013) (quoting *Commonwealth v. Chamberlain*, 30 A.3d 381, 408 (Pa. 2011) and *Commonwealth v. Travaglia*, 28 A.3d 868, 879 (Pa. 2011)). We review the trial court's decision on whether to grant a mistrial for an abuse of discretion. *See Bryant*, *supra* at 728. An abuse of discretion will not be found unless the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *Id.* at 726.

First, Lunsford argues that "the Commonwealth's line of questioning regarding gun ownership and firearm licensing" deprived him of a fair trial by "creat[ing] the impression of prior criminal guilt." Brief of Appellant, at 23. More specifically, he argues that, where "the Commonwealth [] asked if [Lunsford] had a firearm[,] the police witness confirmed that he did not[, and, i]immediately following this answer, the Commonwealth asked if [Lunsford] was allowed to have a firearm license," the jury "would know [] that the Commonwealth was implying that [Lunsford] could not obtain a firearm license due to a prior felony conviction." *Id.* at 20. Lunsford maintains that the court committed reversible error under Pa.R.E. 404(b)(1) "by failing to adequately assign the proper prejudicial effect to the reasonable inference of prior criminal activity created by the Commonwealth's line of questioning."

*Id.* at 24; *see also* Pa.R.E. 404(b)(1) (evidence of past crimes not admissible to prove one's character or to show one acted in conformity therewith); *see also* Pa.R.E. 403 (court may exclude relevant evidence where its probative value is outweighed by prejudicial effect). No relief is due.

Our Supreme Court has previously held in *Commonwealth v. Ragan*, 645 A.2d 811 (Pa. 1994), that "[n]ot all references which may indicate prior criminal acts warrant reversal. Mere passing references to prior criminal activity will not require reversal unless the record illustrates definitively that prejudice resulted from the reference." *Id.* at 819 (internal citations and quotations omitted). The *Ragan* Court also noted that, where the appellant's "specific [past] crime" was "never mentioned," any prejudice suffered by passing reference to his criminal activity was "slight." *Id.* at 819-20; *see also Commonwealth v. Towles*, 106 A.3d 591, 602-04 (Pa. 2014) (affirming admissibility under Rule 404(b) of appellant's prior requests to borrow handgun used to kill victim, noting that "the jury never learned of appellant's inability to legally possess a firearm; therefore, the probative value of th[e] evidence outweighed its prejudicial effect").

Lunsford was charged with, *inter alia*, firearms not to be carried without a license pursuant to 18 Pa.C.S.A. § 6106. *See id.* (carrying firearm in vehicle or concealed or on one's person outside home or place of business without valid license is third-degree felony). Therefore, whether Lunsford possessed a license to carry his firearm was directly at issue during his trial. Accordingly,

the Commonwealth's question regarding whether Lunsford did, in fact, possess a license to carry was not improper. **See generally** Pa.R.E. 402 (admissibility of relevant evidence).

Lunsford takes issue with the Commonwealth asking Trooper Graham whether he was "allowed to have a firearms license" because it suggested to the jury that Lunsford has a criminal record that would disqualify him from obtaining such a license. However, the Commonwealth immediately rephrased its question before the witness had a chance to answer it. Trooper Graham testified only that Lunsford did not have a license to carry a firearm. Trooper Graham never testified that Lunsford was prohibited from legally possessing such a license, and did not suggest either directly or indirectly that Lunsford was previously involved in any specific criminal activity. **See** N.T. Jury Trial, 12/12/19, at 45-50.[13] Lunsford was not prejudiced by the Commonwealth's reworded, unanswered question such that the court erred or abused its discretion in denying his first motion for a mistrial. **Ragan**, **supra**; **Towles**, **supra**; **Bryant**, **supra**.

Next, Lunsford claims that the court abused its discretion by denying his second motion for a mistrial after the Commonwealth elicited testimony that a police officer was "familiar" with McKenzie. Specifically, Lunsford argues

---

[13] Under these circumstances, we reject Lunsford's characterization that the Commonwealth's question—which was immediately rephrased and left unanswered—was an attempt to elicit testimony regarding Lunsford's prior bad acts. **See** Brief of Appellant, at 7.

that a mistrial is warranted because Trooper Graham's testimony conveyed to the jury that his co-defendant has a criminal history. Brief of Appellant, at 25-26 (citing **Commonwealth v. Groce**, 303 A.2d 917, 918 (Pa. 1973)). Lunsford is entitled to no relief on this issue.

In **Commonwealth v. Robinson**, 864 A.2d 460 (Pa. 2004), our Supreme Court reasoned that a mistrial was not warranted where a police officer with the youth division testified that he knew the defendant, where the defendant attended school, and where the defendant resided during certain time frames when defendant was a juvenile. Similarly to Lunsford, the defendant in **Robinson** relied on **Groce** and argued that the officer's testimony allowed the jury to infer that he had previously engaged in criminal activity as a juvenile. The **Robinson** court explained:

> In support of his argument, [a]ppellant cites to [**Groce**], where this Court found prejudicial error when a police officer, while testifying for the Commonwealth, revealed that he came across defendant's nickname during prior investigations and discovered his last name after searching through police files.
>
> Unlike **Groce**, however, there was no indication that [the officer] was familiar with [a]ppellant through the performance of his duties or that [a]ppellant's name was in the police files. We find the present circumstances more akin to **Commonwealth v. Carpenter**, [] 515 A.2d 531 ([Pa.] 1986), where a witness, after identifying himself as a parole officer, testified about a conversation he had with the defendant. In **Carpenter**, we reasoned that [a] mistrial was not warranted and that little, if any[,] prejudice accrued to appellant by th[e] witness' passing reference to his occupation as a parole officer.
>
> * * *
>
> The mention of the witness' occupation as a parole officer and the fact that he knew the appellant did not convey to the jury, either

- 9 -

expressly or by reasonable implication, the fact of a prior criminal offense or record. Such an inference, while certainly **possible**, was most certainly not conveyed to the jury by the mere mention of the witness' occupation and the fact that he knew appellant, as there are an infinite variety of ways that appellant might otherwise know a person who was a parole officer. *Id.* at 534-35 (emphasis in original). This analysis is equally applicable to the instant matter, as we believe that the mere reference to the witness' employment in conjunction with his familiarity with [a]ppellant did not convey to the jury that [a]ppellant had a prior criminal record as a juvenile. **See** [*id.*]; **Commonwealth v. Riggins**, [] 386 A.2d 520, 524 ([Pa.] 1978) ([t]o conclude [] appellant had committed prior crimes from [] detective's single statement that he knew where appellant lived, [] jury would have to indulge in gross speculation).

**Robinson**, **supra** at 504-05 (emphasis in original).

We find the instant matter more analogous to **Robinson** and **Carpenter** than **Groce**. Here, Trooper Graham testified that another officer was merely "familiar" with Lunsford's co-defendant, McKenzie; he did not suggest that the officer knew McKenzie through the performance of his duties or that he came across either defendant's name or alias in any police files. **Cf. Groce**, **supra**. As recognized in **Robinson** and **Carpenter**, there are an "infinite variety of ways" that an officer may be familiar with an individual aside from his prior criminal activity. **Robinson**, **supra** at 504-05 (quoting **Carpenter**, **supra** at 534-35). Thus, in order for the jury to conclude that a corporal's "familiar[ity]" with McKenzie meant that he had a criminal history, the jury would have to engage in "gross speculation." **Riggins**, **supra** at 524. Additionally, Trooper Graham explained that he was able to identify McKenzie "mainly" through his interviews with non-police witnesses. N.T. Jury Trial, 12/12/19, at 49. It cannot be said that Trooper Graham's passing reference

to an officer's familiarity with McKenzie prevented the jury from weighing and rendering a true verdict against Lunsford. ***Robinson***, ***supra***.

In sum, the trial court properly exercised its discretion in denying Lunsford's motions for a mistrial. ***Bryant***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/21/2021